**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) <br> ) <br> Advanced Precision Manufacturing, Inc., ) <br> ) <br> Debtor. ) <br> ) | Case No. 17-18961 <br> Chapter 11 <br> Judge Cassling |

**MIDWEST COMMUNITY BANK'S RESPONSE TO DEBTORS MOTION FOR
AUTHORITY TO USE CASH COLLATERAL AND FOR RELATED RELIEF**

Midwest Community Bank ("MCB"), by and through its undersigned counsel, submits this Response to the Motion for Authority to Use Cash Collateral and for Related Relief ("Motion") (Dkt. 9), filed by Advanced Precision Manufacturing, Inc. ("Debtor") in the above-captioned case (the "Chapter 11 Case").

1. The Debtor is indebted to MCB in the amount of $3,360,893.37 in unpaid principal, accrued interest, fees, and other charges due and owing as of the Petition Date, plus, to the extent allowed under section 506(b) of the Bankruptcy Code, post-petition interest, fees, costs, and other charges (collectively the "Indebtedness") under various agreements and instruments, including, but not limited to:

   a. Promissory Note dated July 25, 2013 in the original principal amount of $350,000;

   b. Promissory Note dated July 25, 2013 in the original principal amount of $1,924,883.66;

   c. Promissory Note dated April 25, 2015 in the original principal amount of $265,763.51;

   d. Promissory Note dated June 2, 2017 in the original principal amount of $36,000;

   e. Business Manager Agreement dated August 31, 2015, pursuant to which the Debtor transferred and assigned certain accounts receivable to MCB;

   f. Commercial Guaranty dated July 25, 2013, pursuant to which the Debtor guaranteed certain obligations owed to MCB by Tadeusz Kozlowski and Bogumila Kozlowski, including, but not limited to, those arising under that

    certain Promissory Note dated July 25, 2013 in the original principal amount of $1,098,816.22; and

    g. Commercial Security Agreements dated April 25, 2013 and July 25, 2013, pursuant to which the Debtor granted MCB a security interest in substantially all of the Debtor's then owned and thereafter acquired property, including all inventory, equipment, accounts, deposit accounts, letter of credit rights, and all additions and proceeds of the foregoing (collectively, the "<u>Pre-Petition Collateral</u>").

(the foregoing and all related documents, as amended from time to time, shall be referred to, collectively, as the "<u>Loan Documents</u>").

2.    MCB perfected its security interests in the Pre-Petition Collateral by, among other things, filing UCC financing statements with the Illinois Secretary of State on July 26, 2013 (Doc. No. 18462451), December 30, 2013 (Doc. No. 18888432), and March 5, 2015 (Doc. No. 20103094).

3.    MCB objects to the Debtor's use of cash collateral on the grounds that the Debtor has not proposed terms that would result in adequate protection of MCB's interests as required under section 363(c) and (e) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

4.    The Debtor's offer of adequate protection is limited to the following:

    a. The Debtor will permit [MCB] to inspect, upon reasonable notice, within reasonable hours, the Debtor's books and records;

    b. The Debtor shall maintain and pay premiums for insurance to cover all of its assets from fire, theft and water damage;

    c. The Debtor shall, upon reasonable request, make available to [MCB] evidence of that which purportedly constitutes its collateral or proceeds;

    d. The Debtor will properly maintain its assets in good repair and properly manage its business;

    e. [MCB] shall be granted valid, perfected, enforceable, security interests in and to Debtor's post-petition assets, including all proceeds and products which are now or hereafter become property of this estate to the extent and priority of their alleged pre-petition liens, if valid, but only to the extent of any diminution in the value of such assets during the period from the commencement of the Debtor's Chapter 11 case through the next hearing on the use of cash collateral;

    f. The Debtor may make the expenditures contained in its budget "plus no more than 10% of the total proposed expense payments, unless otherwise agreed by the respective Lender or upon further Order of this Court"; and

    g. Any expenses that are budgeted for payment in one month but are not paid in such month shall be carried over for payment in subsequent months

5. Under the circumstances of this case, this offer is insufficient, and does not adequately insure against diminution in the value of MCB's collateral.

6. According to the budget attached to the Motion (the "Budget"), The Debtor plans to spend in excess of $200,000.00 in the first three weeks during which it is authorized to use cash collateral. These funds can only come from the proceeds of accounts in which MCB has an interest, and the only way that MCB's interest can be adequately protected is by generating new accounts receivable that are at least equal to the Debtor's expenditures. It is critical to the Debtor's offer, therefore, that the Debtor be able to meet its projections.

7. MCB does not believe that the Debtor's projections are realistic, and therefore believes that any authorization to use cash collateral must be strictly conditioned on the Debtor being able to demonstrate continuously that it is indeed meeting its projections, and generating the revenues and accounts receivable that are essential to protection of MCB's interest.

8. MCB therefore requests that, in addition to the terms set forth above, the Debtor's *interim* use of cash collateral be conditioned on the following:

    a. Superpriority Claims. MCB shall be entitled to superpriority status for claims that MCB has arising under section 507(a)(2) of the Bankruptcy Code from the Debtor's use of cash collateral pursuant to section 363 of the Bankruptcy Code.

    b. Specific Reporting. The Debtor shall provide MCB with:

        i. copies of the most recent statements for all bank accounts in which the Debtor had any interest as of the Petition Date, to be provided by no later than July 3, 2017;

        ii. an itemization of all sources of revenues projected in the Budget, to be provided by no later than July 3, 2017;

3

    iii. a variance report in form and substance acceptable to MCB in its sole and absolute discretion (the "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Budget;

    iv. the Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances", which means, in each case measured on a cumulative basis, (x) up to 10% for cash disbursements measured weekly on a line-item basis, and (y) up to 10% in the aggregate for all cash disbursements;

    v. weekly accounts receivable and accounts payable aging reports, to be provided by no later than 5:00 p.m. on each Monday during the term of this Stipulation;

    vi. weekly inventory reports, to be provided by no later than 5:00 p.m. on each Monday during the term of this Stipulation;

    vii. weekly jobs-in-progress reports, to be provided by no later than 5:00 p.m. on each Monday during the term of this Stipulation; and

    viii. a copy of such other documents and information MCB may reasonably request, to be provided promptly after the time of the request.

c. <u>Events of Default</u>. Each of the following would constitute an "Event of Default":

    i. Failure to comply with the Budget (including the occurrence of any deviation from the Budget that is greater than the Permitted Variance);

    ii. Conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

    iii. Dismissal of the Chapter 11 Case;

    iv. The appointment of a chapter 11 trustee or examiner with expanded powers;

    v. The Debtor asserts any claim against MCB;

    vi. The Debtor challenges the priority, perfection, or validity of any of MCB's liens[1]; and

---

[1] During the period ending sixty (60) days from the date hereof (the "Lookback Period"), the U.S. Trustee or any official committee appointed in the Debtor's bankruptcy case may object to, challenge, or seek to avoid the amount, validity, or enforceability of (a) the Indebtedness or (b) MCB's liens and security interests in the Pre-Petition Collateral securing the Indebtedness (separately and collectively, a "Challenge"). If no such Challenge is filed within the Lookback

4

    vii. The Debtor's failure to place any cash receipts in an account maintained by MCB.

  d. <u>Termination of Authority</u>. The Debtor's right to use cash collateral shall terminate on the earliest to occur of (a) July 25, 2017 (the "<u>Outside Date</u>"), (b) 35 days after the Petition Date if a final order acceptable to MCB authorizing the use of cash collateral has not been entered by that date, (c) the closing date of any sale of substantially all of the assets of the Debtor's estate, and (d) the occurrence of an Event of Default. The date on which the earliest of clauses (a) through (d) occurs is referred to as the "<u>Termination Date</u>." On the Termination Date, the Debtor's authorization to use cash collateral shall terminate and MCB shall be entitled to move for stay relief on five (5) days' expedited notice.

  e. <u>Release by the Debtor</u>. the Debtor shall release MCB and each of its officers, directors, agents, employees, legal counsel and other representatives from any and all claims, demands, causes of action, liability, damage, loss, cost and expense arising from and/or which it has paid, incurred or sustained or believe it has paid, incurred or sustained, known or unknown, absolute or contingent, liquidated or unliquidated, as a result of or related to (a) the transactions evidenced by or related to the Loan Documents and any and all other documents, agreements or instruments related thereto, or (b) any acts or omissions of MCB or any of its officers, directors, agents, employees, legal counsel or other representatives in connection therewith or related thereto, or (c) the extension or denial of credit.

9.  MCB reserves the right to include different or additional terms and conditions to any agreement it may enter into with the Debtor for use of cash collateral on a final basis.

10.  MCB further reserves the right to file supplemental papers objecting to the Debtor's use of cash collateral on a final basis.

WHEREFORE, Midwest Community Bank respectfully requests that the Court enter an order permitting the Debtor to use cash collateral only on the conditions set forth above and granting such further and additional relief as may be just and equitable.

---

Period, the Indebtedness will be deemed and adjudicated finally and indefeasibly as valid and enforceable, and MCB's liens and security interests in the Pre-Petition Collateral securing the Indebtedness will be deemed and adjudicated finally and indefeasibly as valid, enforceable, and perfected liens and security interests in that collateral.

6

Date: June 27, 2017                    MIDWEST COMMUNITY BANK

                                          By:     /s/ Marisa L. Saber
                                                One of Their Attorneys

Marisa L. Saber (#6293678)
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Phone:  (312) 382-3183
Fax:  (312) 382-8910
msaber@cozen.com

and

Joel D. Nesset (*pro hac vice pending*)
COZEN O'CONNOR
33 South Sixth Street, Suite 3800
Phone:  (612) 260-9000
Fax:  (612) 260-9080
jnesset@cozen.com

COUNSEL FOR MIDWEST COMMUNITY BANK

6