# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 17-18961 |
| ADVANCED PRECISION ) | |
| MANUFACTURING, INC., ) | Hon. Donald R. Cassling |
| Debtor. ) | |

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL
## AND GRANTING ADEQUATE PROTECTION

Upon final consideration of the motion (the "Motion") of Advanced Precision Manufacturing, Inc. ("APMI") requesting this Court's authorization to use the cash collateral of Midwest Community Bank ("MCB") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001, and pursuant to the budget attached hereto as Exhibit A (as the same may be modified from time to time in accordance with Paragraph 2 of this Order, the "Budget"); due and proper notice of the Motion having been given to all parties entitled thereto; hearings having been previously held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having now completed a final hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE COURT HEREBY FINDS THAT:**

A. On June 23, 2017 (the "Petition Date"), APMI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101, et seq., the "Code"), commencing the above-captioned bankruptcy case. APMI has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Case and this proceeding under 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. No official creditors' committee has been appointed in this Case pursuant to Code § 1102.

D. On June 28, 2017, the Court granted the APMI Cash Collateral Motion on an interim basis [Dkt. No. 24] (the "First Interim Order").

E. On July 27, 2017, the Court granted the Motion on an interim basis for a second time [Dkt. No. 70] (the "Second Interim Order").

F. APMI is indebted to MCB pursuant to certain Loan Documents (as that term is defined in MCB's proof of claim filed on August 6, 2017) and a Business Manager Agreement entered into on September 2, 2015 ("BMA Agreement" and collectively with the Loan Documents, the "Prepetition Documents"). All indebtedness or obligations under the Prepetition Documents as of the Petition Date, including, without limitation, all obligations and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents under Code § 506(b) are collectively referred to herein as the "Prepetition Debt".

G. Subject to Paragraph 6 of this Order, APMI and each of its insiders (as defined in Code § 101) (the "Insiders"), including, without limitation, Tadeusz Kozlowski, Bogumila Kozlowski and Chris Kozlowski, in furtherance of the settlement of MCB's objections to the use of cash collateral, hereby admit, stipulate and agree that:

a. the Prepetition Documents are valid and enforceable and evidence and govern (i) the Prepetition Debt, (ii) the asserted security interests and liens of MCB in collateral existing as of the Petition Date and all proceeds, rents, issues, profits

and products thereof (collectively, the "Prepetition Collateral"; the Prepetition Collateral and all Replacement Lien Collateral (as defined below) that is subject to the MCB Replacement Liens are hereinafter collectively referred to as the "Aggregate Collateral"), and (iii) the prepetition financing relationship between APMI and MCB;

b. the Prepetition Debt constitutes the legal, valid and binding obligation of APMI, enforceable in accordance with the terms of the Prepetition Documents;

c. MCB has an allowed claim as of the Petition Date, in an amount not less than $3,348,853.74 (including indebtedness totaling $3,061,687.58 under the Loan Documents plus $287,166.16 in outstanding balances owed to MCB under the BMA Agreement as set forth in the Rider to Proof of Claim of Midwest Community Bank filed on August 6, 2016 in the Case),[1] exclusive of accruing attorneys' fees, interest and other costs, which MCB filed as a secured claim and which claim APMI acknowledges and agrees is secured by the Prepetition Lien (as defined below);

d. APMI agrees to not dispute the allowed amount of MCB's claim to the extent of $3,348,853.74;

---

[1] MCB agrees to amend its proof of claim to the extent necessary to reflect its total allowed claim amount of at least $3,348,853.74. Without limiting its rights outside of the bankruptcy proceedings of ADK and APMI, MCB acknowledges and agrees that it may not collect from ADK and APMI, in the aggregate, more than the amount of its allowed claim against ADK or APMI, whichever allowed amount is greater, inclusive of any attorneys' fees, interest, costs and charges that may be allowable under Code section 506(b) or other applicable law.

{12207-001 ORD A0480767.DOC 2}    3

e. no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, applicable non-bankruptcy law or otherwise;

f. the liens and security interests of MCB in the Prepetition Collateral (collectively, the "Prepetition Liens") are first priority, properly perfected, valid and enforceable security interests, that are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and that are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable non-bankruptcy law, subject only to any liens of third parties upon the Prepetition Collateral, which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date (collectively, "Permitted Priority Liens"); and

g. APMI and each of its Insiders do not have, and hereby release, and are forever barred from bringing or asserting any claims, counterclaims, causes of action, defenses or setoff rights, whether in law or equity, relating to the Prepetition Documents, the Prepetition Liens, and/or the Prepetition Debt, against MCB and its affiliates, subsidiaries, agents, officers, directors, shareholders,

members, managers, employees, representatives, attorneys, advisors, consultants, predecessors in interest, successors and assigns.

H. All cash and cash equivalents of APMI are Prepetition Collateral or proceeds thereof. APMI acknowledges that these funds constitute "cash collateral" of MCB (the "Cash Collateral") within the meaning of 11 U.S.C. § 363(a).

I. The Prepetition Collateral includes mortgages with respect to each the following properties, commonly known as (i) 450 East Waterside Drive, Chicago, IL 60601 (the "Waterside Property"); (ii) 780 Wedgewood Circle, Lake in the Hills, IL 60156 (the "Wedgewood Property"); (iii) 201 North Westshore Drive Unit 2204, Chicago, IL 60601 (the "Westshore Property"); and (iv) 2301 Estes Avenue, Elk Grove Village, IL 60007 (the "Estes Property"); and 413 Jason Lane, Schaumburg, Illinois 60173 (the "Residence").

J. On June 29, 2017, MCB filed the Amended Verified Complaint to Confess Judgment against Tadeusz Kozlowski, Bogumila Kozlowski and A.D.K. Arms, Inc. ("State Court Defendants") in the Circuit Court of Cook County, Illinois, Case No. 17 L 50595 and obtained an Order of Judgment entered on July 12, 2017, for which MCB issued Citations to Discover Assets to the State Court Defendants (the "Citations").

K. Additionally, MCB has commenced foreclosure proceedings with respect to the Estes Property, the Westshore Property, the Waterside Property and the Wedgwood Property (collectively, the "Foreclosure Proceedings").

L. MCB has agreed to a standstill with respect to the Citations and the Foreclosure Proceedings such that MCB will not pursue or seek to enforce its rights with respect thereto through the earlier of the Termination Date (defined herein) and November 17, 2017; provided that APMI and the Insiders provide weekly status reports to MCB regarding the status of their

sale efforts with respect to the Westshore Property, the Waterside Property and the Wedgewood Property, and further provided that MCB shall be entitled to take any actions to necessary in its discretion to ensure that the priority of its liens with respect to the Citations is preserved.

M.   MCB is entitled to adequate protection as set forth herein pursuant to Code §§ 361 and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Petition Date.

N.   APMI has requested that MCB consent to APMI's use of the Cash Collateral in order to provide funds to be used in the operation of APMI's business. If APMI's business were to cease operations, APMI and its creditors, including employees, would suffer irreparable harm.

O.   Subject to the terms and conditions set forth in this Order, and with the express understanding that APMI and the Insiders intend to, among other things set forth in this Order, list for sale and sell the Westshore Property, the Waterside Property and the Wedgewood Property, promptly seek authority to sell substantially all of APMI's assets outside the ordinary course of business pursuant to 11 U.S.C. § 363(b) by November 17, 2017 (the "Sale"), to file a procedures motion for the Sale, and to pay MCB from proceeds of the Sale up to the total amount that is due and owing to MCB at closing of the Sale, including the Prepetition Debt plus postpetition interest, attorneys' fees and costs incurred by MCB, MCB is willing to consent to the entry of this Order. Nothing contained in this Order shall or shall be construed to waive, impair, limit or prejudice in any way MCB's rights to contest or object to any further or other use of the Cash Collateral by APMI or to seek additional adequate protection, or prejudice APMI's right to oppose and defend against any such request.

P.   MCB is deemed a qualified bidder with respect to the Sale and may exercise its right to credit bid.

Q. The terms of this Order have been negotiated at arm's length and in good faith.

R. Under the circumstances of this Case, this Order is a fair and reasonable response to APMI's request for MCB's consent to the use of Cash Collateral, and the entry of this Order is in the best interest of AMPI's estate and its creditors.

S. The notice provided by APMI of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d), and 9014, and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

T. This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Petition Date.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby granted on a final basis, subject to the terms and conditions set forth in this Order.

2. Through the earlier to occur of (a) the date on which MCB provides notice (via email, facsimile, or courier) to APMI's counsel and the Office of the United States Trustee of the occurrence of an "Event of Default" (as defined below) (a "Default Notice"), (b) the closing of any Sale of all, or substantially all, of APMI's assets, and (c) November 17, 2017 (the "Termination Date"), APMI is authorized to use Cash Collateral, including the cash receipts of approximately $34,000 received by MCB from General Dynamics which MCB shall deliver to APMI upon entry of the Order and receipt of delivery instructions from APMI, pursuant to this Order in accordance with the Budget, with a permitted variance of ten percent (10%) per expense line item, to pay the operating expenses specified in the Budget when the same are due and payable. Any expenses that are budgeted for payment in one month but are not paid in such

month shall be carried over for payment in subsequent months. The Budget may be modified with the prior written consent of MCB, without further order of the Court. With respect to a Default Notice, APMI shall have three (3) business days (the "Cure Period") to cure all defaults set forth in the Default Notice before the Termination Date shall become effective; provided that during such Cure Period, APMI's authority to use Cash Collateral shall be suspended until such time, if ever, as APMI cures all such defaults within the Cure Period, except that APMI may use Cash Collateral during the Cure Period to pay any payroll that was incurred prior to the date the Default Notice. For the avoidance of doubt, the occurrence of the Termination Date described above does not prohibit APMI's right to request the use of Cash Collateral after the Termination Date in accordance with Paragraph 9 of this Order.

3. As adequate protection for any use or diminution (whether by depreciation, use, sale, loss, or otherwise) in the value of MCB's interest in the Prepetition Collateral (including, without limitation, the Cash Collateral), MCB is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens upon all property of APMI (other than any avoidance actions under chapter 5 of the Bankruptcy Code) and all products, proceeds, rents, issues and profits thereof (collectively, the "Replacement Lien Collateral"). Such liens of MCB on the Replacement Lien Collateral (the "MCB Replacement Liens") shall be first priority liens but subject to only its Prepetition Liens and any Permitted Priority Liens.

4. As further adequate protection of MCB's interests:

(a) In addition to providing MCB, upon MCB's reasonable request, such other documents, including any documents MCB is entitled to receive under the Prepetition Documents, APMI shall provide to MCB on each Tuesday through the Termination Date: (1) a report, in form and substance satisfactory to MCB,

reconciling APMI's actual performance (including, without limitation, APMI's actual collections, sales, disbursements, and credit memos and accounts receivable deductions) for the week ended on the preceding Friday with APMI's projected performance for such week in the Budget, and shall timely file its monthly operating reports; and (2) accounts receivable and accounts payable aging reports as of the week ended on the preceding Friday;

(b) APMI shall provide to MCB on each Wednesday through the Termination Date jobs-in-progress reports;

(c) APMI shall provide to MCB an inventory report for the quarter ended June 30, 2017 by August 14, 2017, and an inventory report for the quarter ended September 30, 2017 by November 13, 2017;

(d) APMI shall maintain and keep the Replacement Lien Collateral in good condition, repair and working order (normal wear and tear excepted);

(e) APMI shall maintain all insurance that existed as of the Petition Date with respect to APMI's business and the Replacement Lien Collateral;

(f) APMI shall only use the Replacement Lien Collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance;

(g) MCB is hereby granted relief from the automatic stay, effectively immediately, to apply the BMA reserve fund balance of $83,631.40 against the Prepetition Debt;

(h) The Insiders shall cause the Westshore Property to be sold for the gross purchase price of $420,000 on or before September 8, 2017, or as soon thereafter as is reasonably practicable, but in no event later than expiration of the current listing period, unless extended by agreement of MCB or order of the Court, and the proceeds of such sale shall be distributed so that the first lien on such property is paid in full, customary closing costs are paid, $50,000 is paid to APMI as Cash Collateral available to be used pursuant to this Order and the balance shall be paid to MCB at closing of such sale;

(i) The Insiders shall immediately cause the Waterside Property and the Wedgewood Property to be listed for sale for a listing period not to exceed six months from the date hereof, unless extended by agreement of MCB or order of the Court;

(j) The Insiders shall cause deeds in lieu of foreclosure to be executed with respect to the Westshore Property, the Waterside Property and the Wedgewood Property, which deeds shall be (a) held in escrow by an escrow agent mutually agreed upon by the Insiders and MCB and (b) delivered to MCB at the conclusion of the respective listing periods in subparagraphs (g) and (h) immediately above (the "Listing Expiration Date") if the subject property is not sold by its Listing Expiration Date, provided that if any such deed is released to MCB, a credit against the indebtedness owed to MCB shall be given in an amount equal to the

        net proceeds received from a commercially reasonable sale of the subject property; and

   (k)    The Insiders shall cause the Estes Property to be offered to a purchaser of APMI's business and assets so long as such purchaser chooses to also purchase the Estes Property, separately provides a purchase price for the Estes Property and such purchase price is a fair market value for such property; provided that in connection with such a sale of the Estes Property, and only such sale, the bank agrees to not credit bid for the Estes Property, but reserves all of its rights with respect to such property, including any right to credit bid after the expiration of the Standstill.

The grant of adequate protection provided herein is without prejudice to MCB's right to seek additional adequate protection of its interests in APMI's property at any time, and without prejudice to APMI's right to oppose and defend against any such request.

   5.    If and to the extent the adequate protection of the interests of MCB in the Prepetition Collateral granted pursuant to this Order proves insufficient, MCB will have an allowed claim under Code § 507(b) in the amount of any such diminution, with priority over the claims of any other party in interest under Code § 507(b).

   6.    <u>Challenges Regarding MCB Liens and Claims</u>.

        (a)    The stipulations and representations of APMI and its Insiders contained in this Order will be binding upon entry of this Order.

        (b)    APMI's stipulations and representations contained in this Order will be binding on all parties in interest, unless and solely to the extent that, on or before the earlier of October 9, 2017, or the date on which a hearing to approve the sale of all or substantially all of APMI's assets concludes (the "<u>Investigation Period</u>"), any such party files an objection or motion with the Court challenging or seeking standing to challenge the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against MCB (a "<u>Challenge</u>"). Nothing herein will be deemed to grant standing in favor of any party.

        (c)    If a party in interest does not file a Challenge before the end of the Investigation Period, or a commenced Challenge is denied, without further order of the Court, the Prepetition Debt and Prepetition Liens of MCB will be deemed to be allowed for all purposes in this Case and will not be subject to challenge by any party in interest as to extent, validity, priority or otherwise.

7. APMI is prohibited from seeking to incur or incurring debt pursuant to 11 U.S.C. § 364 at any time prior to the Termination Date. Absent MCB's consent or a Court order authorizing the same, APMI is also prohibited from seeking to use or using additional Cash Collateral prior to the Termination Date.

8. Unless otherwise ordered by the Court, APMI's authority to use the Cash Collateral pursuant to this Order shall automatically terminate on the Termination Date, without further action by MCB and unless subsequently extended by written agreement of APMI and MCB; provided that: (1) the obligations of APMI and the rights of MCB with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected; and (2) APMI and MCB shall retain all of their respective rights and remedies under this Order and the Code, including, without limitation, APMI's right to request the continued use of Cash Collateral and MCB's right to oppose APMI's further use of Cash Collateral; and provided further that, during the five (5) business day period following the occurrence of the Termination Date, if APMI has sought such relief to continue using Cash Collateral, APMI may use Cash Collateral after the Termination Date solely to pay amounts due to employees for postpetition services rendered through the Termination Date, which limitation may be altered upon the entry of a new order, if any, authorizing the use of cash collateral.

9. For purposes of this Order, an "Event of Default" shall mean any of:

    (a) The violation or breach by APMI or any of the Insiders of any of the covenants, agreements, or other terms of this Order;

    (b) The entry of an order converting the Case to a case under chapter 7 of the Code or terminating the authority of APMI to operate its business;

    (c) The termination, expiration, lapse, or reduction of insurance coverage that is continuing on the Aggregate Collateral for any reason whatsoever;

    (d) APMI's failure to pay, when due, any postpetition taxes;

(b) To the extent there exists any conflict among the Motion, the Prepetition Documents, the First Interim Order, the Second Interim Order, and the terms of this Order, this Order shall govern and control.

(c) The automatic stay of Code § 362 is hereby modified to the extent necessary to effectuate the provisions of this Order.

(d) MCB will not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, the Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer of MCB, as applicable, and directed to APMI. No failure of MCB to require strict performance by APMI (or by any Trustee) of any provision of this Order will waive, affect or diminish any right of MCB thereafter to demand strict compliance and performance therewith, and no delay on the part of MCB in the exercise of any right or remedy under this Order, the Prepetition Documents or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by MCB of any of its rights under the Prepetition Documents, the Code or applicable non-bankruptcy law, including, without limitation, MCB's right to later assert (1) that any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (2) a claim under Code § 507(b). Without limiting the scope of APMI's general release of MCB and APMI's other covenants under this Order, APMI reserves any and all rights and defenses that are not expressly waived or released in this Order.

(e) Except as provided in Paragraph 6 of this Order, this Order is binding on all parties in interest in the Case and their respective successors and assigns, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee of the Debtor ("Trustee"), except that any Trustee will have the right to terminate this Order after notice and a hearing, subject to the terms and conditions of this Order. If this Order does not become a final non-appealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (1) subject to Paragraph 6 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by, and the releases contained in, this Order; and (2) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits will be governed in all respects by the original provisions of this Order.

(f) Without MCB's written consent, the terms and provisions of Paragraphs G and 6 of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, will survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case.

12. APMI shall promptly serve a notice of the entry of this Order, together with a copy of this Order, by regular mail upon (i) the Office of the United States Trustee, (ii) the

{12207-001 ORD A0480767.DOC 2}                                13

creditors holding the 20 largest unsecured claims against APMI, (iii) any known holders of prepetition liens against APMI's property, and (iii) any other party which has filed a request with this Court for notice in APMI's case and served such request upon APMI's counsel.

13. This matter is set for status hearing on November 7, 2017 at 10:00 a.m.

Dated: August ___, 2017               ENTER:

                                      _____
                                      United States Bankruptcy Judge

# EXHIBIT A

## Budget

[*See attached.*]

{12207-001 ORD A0480767.DOC 2}

# Exhibit A

| | WEEK 1 WEEK ENDING 08/04/17 | WEEK 2 WEEK ENDING 08/11/17 | WEEK 3 WEEK ENDING 08/18/17 | WEEK 4 WEEK ENDING 08/25/17 | WEEK 5 WEEK ENDING 09/01/17 | WEEK 6 WEEK ENDING 09/08/17 | WEEK 7 WEEK ENDING 09/15/17 | WEEK 8 WEEK ENDING 09/22/17 | WEEK 9 WEEK ENDING 09/29/17 | WEEK 10 WEEK ENDING 10/06/17 | WEEK 11 WEEK ENDING 10/13/17 | WEEK 12 WEEK ENDING 10/20/17 | WEEK 13 WEEK ENDING 10/27/17 | WEEK 14 WEEK ENDING 11/03/17 | WEEK 15 WEEK ENDING 11/10/17 | WEEK 16 WEEK ENDING 11/17/17 | WEEK 17 WEEK ENDING 11/24/17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET | BUDGET |
| ACCTS REC BEGIN | $337,620.52 | $348,846.11 | $487,113.11 | $487,113.11 | $393,537.51 | $391,806.91 | $411,929.31 | $389,751.71 | $414,304.11 | $363,737.05 | $377,652.45 | $485,374.85 | $485,197.25 | $472,119.65 | $444,042.05 | $470,714.45 | $447,636.85 | $389,809.25 |
| SALES | $29,300.00 | $163,970.00 | $68,600.00 | $49,487.00 | $48,700.00 | $35,700.00 | $53,600.00 | $30,000.00 | $65,480.00 | $159,500.00 | $53,500.00 | $30,000.00 | $22,000.00 | $99,750.00 | $35,000.00 | $35,000.00 | $30,000.00 |
| LESS COLLECTION | $18,074.41 | $25,703.00 | $162,175.60 | $51,217.60 | $28,577.60 | $57,877.60 | $29,047.60 | $67,677.60 | $52,566.60 | $51,777.60 | $53,777.60 | $43,077.60 | $58,077.60 | $73,077.60 | $58,077.60 | $58,077.60 | $38,077.60 |
| ACCTS REC END | $348,846.11 | $487,113.11 | $393,587.51 | $391,806.91 | $411,929.31 | $389,751.71 | $414,304.11 | $376,626.51 | $377,652.45 | $485,374.85 | $485,197.25 | $472,119.65 | $444,042.05 | $470,714.45 | $447,636.85 | $389,809.25 | $381,731.65 |
| | | | | | | | | | | | | | | | | | |
| NET CASH FLOW | | | | | | | | | | | | | | | | | |
| BEGIN BALANCE | $8,203.66 | $682.06 | $7,973.55 | $82,253.36 | $92,578.15 | $29,828.31 | $32,010.25 | $388.92 | $22,792.40 | $6,230.25 | $1,322.65 | $9,020.56 | $5,802.55 | $409.50 | $1,138.09 | $2,777.18 | $18,497.59 |
| CASH REC'D | $18,074.41 | $59,703.00 | $162,175.60 | $51,217.60 | $28,577.60 | $57,877.60 | $29,047.60 | $67,677.60 | $52,564.60 | $51,777.60 | $53,777.60 | $43,077.60 | $58,077.60 | $73,077.60 | $58,077.60 | $92,827.60 | $38,077.60 |
| LESS PAYOUTS | ($25,596.01) | ($52,411.51) | ($87,895.79) | ($40,897.51) | ($91,322.44) | ($55,696.01) | ($60,668.88) | ($64,196.01) | ($69,126.75) | ($56,685.20) | ($46,079.69) | ($46,797.51) | ($62,948.75) | ($72,374.01) | ($56,433.51) | ($77,107.19) | ($39,596.01) |
| ENDING BALANCE | $682.06 | $7,973.55 | $82,253.36 | $92,573.45 | $29,828.61 | $32,010.20 | $388.92 | $3,870.51 | $6,230.25 | $1,322.65 | $9,020.56 | $5,300.65 | $429.50 | $1,133.09 | $2,777.18 | $18,497.59 | $16,979.18 |
| | | | | | | | | | | | | | | | | | |
| **EXPENSES:** | WEEK ENDING 08/04/17 | WEEK ENDING 08/11/17 | WEEK ENDING 08/18/17 | WEEK ENDING 08/25/17 | WEEK ENDING 09/01/17 | WEEK ENDING 09/08/17 | WEEK ENDING 09/15/17 | WEEK ENDING 09/22/17 | WEEK ENDING 09/29/17 | WEEK ENDING 10/06/17 | WEEK ENDING 10/13/17 | WEEK ENDING 10/20/17 | WEEK ENDING 10/27/17 | WEEK ENDING 11/03/17 | WEEK ENDING 11/10/17 | WEEK ENDING 11/17/17 | WEEK ENDING 11/24/17 |
| PAYROLL | | | | | | | | | | | | | | | | | |
| PAYROLL | $20,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 | $22,000.00 |
| PAYROLL - OFFICERS | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $4,574.87 | $1,574.87 | $4,574.87 |
| PAYROLL - TAXES | $12,000.00 | $12,000.00 | $24,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| EMPLOYEE COURT ORDERS | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 | $373.00 |
| 401K CONTRIBUTIONS & LOANS | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 | $648.14 |
| 401 Safe Harbor Match | | | | | | | | | | | | | | | | | |
| TOTAL PAYROLL | $25,596.01 | $39,596.01 | $51,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 | $39,596.01 |
| | | | | | | | | | | | | | | | | | |
| **EXPENSES:** | | | | | | | | | | | | | | | | | |
| ADMIN/GENERAL | | | | | | | | | | | | | | | | | |
| AUTO MOBILE | | | | | | | | | | | | | | | | | |
| AUTO MAINT | | | | | | | | | | | | | | | | | |
| BLDG MAINTENANCE | | | | | | | | | | | | | | | | | |
| COMPUTER EXPENSE | | | | | | | $747.37 | | $747.37 | | | | $747.37 | | | | |
| EQUIP LEASE (COPIER) | | | | | | | | | | | | | | | | | |
| EQUIP LEASE (MACHINERY) | | | | | | | $251.69 | | | $251.69 | | | | | | | |
| FREIGHT EXPENSE | | $1,778.00 | $1,883.68 | | $1,778.00 | | $1,883.68 | | $1,778.00 | | $1,883.68 | | | $1,778.00 | | $1,883.68 | |
| INSURANCE (BUSINESS/WORKERS COMP/AUTO) | | | $1,500.00 | | $1,500.00 | $1,500.00 | $500.00 | $1,500.00 | | $500.00 | $500.00 | | | | | | |
| INSURANCE (HEALTH/DENTAL/VISION) | | | $3,246.18 | | $6,941.87 | | | | $3,246.18 | | | | $3,246.18 | | | | |
| LIFE INSURANCE | | | $15,869.92 | | $16,359.19 | | | | $16,359.19 | | | | $14,359.19 | | | | |
| OFFICE SUPPLIES | | $837.50 | | $627.50 | | | $837.50 | | | $837.50 | | $627.50 | | | $837.50 | $627.50 | |
| PROFESSIONAL SERVICES | | | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | | | | | |
| RAW MATERIALS | | $6,500.00 | $5,000.00 | | $10,000.00 | $10,000.00 | $1,000.00 | $15,000.00 | | $2,000.00 | $1,500.00 | | | $15,000.00 | $15,000.00 | $15,000.00 | |
| RENT | | | $5,700.00 | | $5,700.00 | | $15,000.00 | | $5,700.00 | | | | $5,000.00 | $10,000.00 | | $15,000.00 | |
| SALES EXPENSE | | | $500.00 | | $1,000.00 | $500.00 | $1,000.00 | $1,000.00 | $3,000.00 | $500.00 | $500.00 | | | $5,000.00 | | $5,000.00 | |
| SHOP SUPPLIES | | $1,000.00 | $1,000.00 | | $2,000.00 | $2,000.00 | $1,000.00 | $2,000.00 | | $5,000.00 | $500.00 | | | | | | |
| SUBCONTRACT EXPENSE | | $2,700.00 | $2,000.00 | | $5,000.00 | $2,000.00 | $500.00 | $5,000.00 | | $2,000.00 | $1,500.00 | | | | | | |
| TELE & COMMUNICATIONS | | | | | $600.00 | | | | $600.00 | | | | | $1,000.00 | $1,000.00 | | |
| UTILITIES | | | | $574.00 | | | $0.00 | | | $5,900.00 | | $6,474.00 | | | | | |
| TOTAL EXPENSES | $0.00 | $12,815.50 | $36,299.78 | $1,301.50 | $51,726.43 | $16,100.00 | $21,072.87 | $24,600.00 | $29,530.74 | $17,089.19 | $6,483.68 | $7,201.50 | $23,352.74 | $32,778.00 | $16,837.50 | $37,511.18 | $0.00 |
| TOTAL ALL EXPENSES | $25,596.01 | $52,411.51 | $87,895.79 | $40,897.51 | $91,322.44 | $55,696.01 | $60,668.88 | $64,196.01 | $69,126.75 | $56,685.20 | $46,079.69 | $46,797.51 | $62,948.75 | $72,374.01 | $56,433.51 | $77,107.19 | $39,596.01 |
| | | | | | | | | | | | | | | | | | |
| CASH ON HAND END | $682.06 | $7,973.55 | $82,253.36 | $92,573.45 | $29,828.61 | $32,010.20 | $388.92 | $3,870.51 | $6,230.25 | $1,322.65 | $9,020.56 | $5,300.65 | $429.50 | $1,133.09 | $2,777.18 | $18,497.59 | $16,979.18 |